NATALIE DiFRANCESCO, TRUSTEE v. BENJAMIN F. GOLDMAN.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued November 6—decided December 5, 1940.

*Thomas R. Robinson,* with whom was *Vincent J. Fasano,* for the appellant (defendant).

*Lawrence S. Finkelstone,* with whom was *Lawrence E. Levy,* and, on the brief, *George N. Finkelstone,* for the appellee (plaintiff).

AVERY, J.  The plaintiff brought this action in two counts.  In the first count he alleged that the defendant received on behalf of the plaintiff $13,500 and was wrongfully withholding therefrom the sum of $3200.  The second count was for services and mate-

rials claimed to have been furnished by the plaintiff for the defendant. No questions relating to the second count are involved upon this appeal and we do not further refer to it. In his answer, the defendant admitted the receipt of $13,500 and, by way of a special defense, alleged that this sum was received in settlement of a suit brought by the defendant on behalf of the plaintiff against certain persons; that at the time of the settlement it was agreed that the defendant should make payments from the money received and should retain the sum of $2500 for his services in the suit and $500 to cover his disbursements, and should hold $200 in escrow to be paid to a certain party when the plaintiff should have agreed with the party as to the amount due. By way of a second special defense the defendant alleged that subsequent to the settlement he gave a check for $5967 to the plaintiff which the latter received in full satisfaction of an accounting of the sum collected, with the exception of the $200 held by the defendant in escrow.

The case was tried to the jury and the plaintiff claimed to have proved the following facts: He was a builder and had erected a building in New Haven which was sold. As part of the purchase price, the plaintiff took back a second mortgage of $108,500 which by payments had been reduced to $95,000. Thereafter, the holder of the first mortgage on the property foreclosed. The plaintiff then consulted counsel, among others, the defendant, with reference to a suit on the mortgage note. Desiring to have additional counsel, the plaintiff consulted with another attorney, Mr. Hamilton. At that time, it was agreed that the defendant should receive for his services in the case one-half of whatever fee Hamilton might charge. Thereafter, suit was brought on the note and judgment recovered in the amount of $45,538.98 which

was affirmed after an appeal to the Supreme Court. Later, another suit was brought to recover on this judgment, and while the suit was on trial, after some negotiations, it was agreed that it should be settled by the payment of $13,500. Thereafter, at the plaintiff's direction, the defendant paid out certain sums from the monies received and among other payments paid to attorney Hamilton the sum of $1000 for services and $50 for disbursements, and the defendant retained from the monies received $3000, of which $2500 was for the defendant's services in the litigation and $500 to cover expenses in that and other cases. The defendant claimed to have proved that when he undertook the litigation on behalf of the plaintiff their arrangement was that the defendant should receive a reasonable compensation for his service and that at the time the plaintiff's suit was settled, there was an agreement entered into between the plaintiff and the defendant that the defendant should retain from the amount received $2500 for his services and $500 for his disbursements, and should hold $200 in escrow to pay a claim of a third party against the plaintiff which had not then been agreed upon as to amount.

As the case stood before the jury at the close of the evidence, the principal question to be determined was whether the plaintiff's testimony as to the amount agreed to be retained by the defendant as compensation for his services and disbursements in the litigation was correct or whether the defendant's account of the agreement between the parties was correct. The assignments of error relate principally to the charge of the court to the jury. In its charge, the trial court gave the jury instructions as to elements to be considered in determining a reasonable attorney's fee. The court then proceeded to state: "If, on the other

hand, you conclude that there was an agreement or that the agreed amount was $2500 as claimed by Goldman to be paid for the services that he rendered and that the agreement also provided that he should retain the $500 to apply on his cash expenditures in the Konold cases and on the other charges, and if you further conclude the $2500 was a reasonable fee as I have explained that term to you in the beginning of these instructions, DiFrancesco could recover nothing on the first count. There are other possibilities that I must speak of. . . . For example, suppose you conclude that there was an agreement between the parties that DiFrancesco was to pay a fee of $2500 and that that is reasonable and that the agreement made no reference to $500, now if that should be your conclusion, and in the event that you found that the fee agreed upon was $2500 and that it was reasonable in amount, DiFrancesco would be entitled to the return of $500 with interest from July 11, 1933. Nor is that the end of the possibilities; here is another possibility, another conclusion, to which you might come; although each of the parties claims that there was an agreement reached after discussion you are at liberty to conclude, if you disbelieve each party on this phase of the controversy, that there was in fact no agreement at all. . . . Now, if you reach that conclusion that there was no agreement as to the amount, Goldman would be privileged to retain from the $3000 he had in his hands only such a sum as would represent a reasonable fee, such fee to be determined by the circumstances and factors I outlined earlier, but obviously in no event to exceed $2500. In other words, you are at liberty, if there is no agreement, to set what in your judgment amounts to a reasonable fee by the application of the rule which I endeavored to outline to you at the beginning of the charge. . . . The sec-

ond possibility is this; that there was an agreement that Goldman should receive a fee of $2500 and an additional sum of $500 for cash outlay and to apply on other charges. If you find that was the agreement and that $2500 was a reasonable fee DiFrancesco is entitled to not a dime under the first count because those two items would total $3000 and that is all Goldman had in his possession. I will pass to the third possibility and this is that your conclusion should be that there was an agreement that Goldman should receive $2500 as a fee, that that fee was reasonable and there was no agreement that he was to retain the additional $500."

The effect of these instructions was to inform the jury that the defendant could not retain from the amount collected as compensation for his services the amount agreed upon with the plaintiff unless the jury found that amount was reasonable, and, further, if the jury found there was no agreement as to the amount to be retained for the defendant's services he would have been entitled to retain the reasonable value thereof, in no event exceeding $2500.

Contracts between attorney and client fall naturally into at least two categories: (1) those made before the relationship of attorney and client has commenced or after the relationship has terminated; and (2) those made during the relationship. The agreement between the plaintiff and the defendant, whatever it was, was made during the existence of the relationship. Courts of equity scrutinize transactions made between attorney and client during the existence of the relationship with great care and if there are doubts they will be resolved in favor of the client. *McKnight* v. *Gizze*, 107 Conn. 229, 235, 140 Atl. 116; *Mills* v. *Mills*, 26 Conn. 213, 219. Nevertheless, an attorney is not prohibited from contracting with his client respecting

his fees, and a contract thus made after the commencement of the relationship of attorney and client is not per se void but will by reason of the confidential nature of the relationship be closely scrutinized by the court. "No undue advantage can be taken of the relationship of attorney and client in order to procure such a contract; but where the parties are free to contract, their agreement should not be set aside or the agreed compensation withheld unless fraud has been perpetrated, undue influence exerted, material facts affecting the subject matter misrepresented or suppressed, or advantage taken of a position of confidence and trust to obtain an unconscionable advantage over the party, in which case a court of equity may grant relief from such oppression, and the attorney will be confined to a reasonable charge for compensation without regard to the attempted fixation of the value of his services." 7 C. J. S. 1051; id., 1049; see *Taft* v. *Valley Oil Co., Inc.,* 126 Conn. 154, 159, 9 Atl. (2d) 822; *Grievance Committee* v. *Ennis,* 84 Conn. 594, 605, 80 Atl. 767. This principle applies whether the contract for services is unexecuted or whether, as in this case, it was claimed to have been executed. In either case, the contract will be sustained if found to have been fairly made and no unconscionable advantage taken of the client by the attorney.

The effect of the instructions given by the trial court was to inform the jury that even if they found there was a contract between the plaintiff and the defendant as to the amount of the service, such contract was not effective unless the jury first found that it was reasonable. In effect, this instruction denied the right of an attorney to contract with his client as to the value of his services while the relationship existed and permitted the attorney to recover only such

sum as the jury might find to be reasonable. This was an incorrect statement of the law. As shown by the authorities cited, it is only when the amount agreed upon is the result of fraud, misrepresentation, coercion, and unconscionable advantage taken or other inequitable conduct on the part of the attorney that a court can interfere. The instruction was also incorrect in so far as the trial court stated to the jury that if they found no contract existed between the parties, the defendant was entitled to retain for his services such sum as the jury might find they were reasonably worth, not exceeding the amount of $2500. If the jury found there was no contract between the parties, the defendant was entitled to retain for his services their reasonable value. There was no basis on which the court could place a limit of $2500 upon the amount which the jury might find his services were reasonably worth.

There is error and a new trial is ordered.

In this opinion the other judges concurred.