STATE OF CONNECTICUT *v.* KATHLEEN WYATT
(AC 23440)

Lavery, C. J., and Dranginis and McLachlan, Js.

---

Argued October 17—officially released December 30, 2003

*Daniel J. Krisch*, special public defender, with whom were *Sarah J. Healy*, legal intern, and, on the brief, *Wesley W. Horton*, and *Barbara Ellis* and *Julia K. Ulrich*, legal interns, for the appellant (defendant).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James R. Turcotte*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Kathleen Wyatt, appeals from the judgment of conviction, rendered after a trial to the court, of several charges stemming from a drunken driving accident that claimed the life of the operator of a motorcycle and seriously injured his passenger.[1] The defendant claims on appeal that the court (1) deprived her of a fair trial by hearing testimony as to her blood alcohol content (BAC) prior to ruling on her motion in limine to preclude that very evidence and (2) violated the constitutional prohibition against double jeopardy by imposing consecutive sentences for

---

[1] As to the deceased operator, Clark Smith, the defendant was convicted of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1), misconduct with a motor vehicle in violation of General Statutes § 53a-57 (a) and manslaughter in the second degree with a motor vehicle in violation of General Statutes § 53a-56b (a). As to Smith's passenger, Diane Valiquette, the defendant was convicted of assault in the second degree in violation of General Statutes § 53a-60 (a) (3) and assault in the second degree with a motor vehicle in violation of General Statutes § 53a-60d (a). The defendant also was convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1), reckless driving in violation of General Statutes § 14-222 (a) and making an improper turn in violation of General Statutes § 14-242 (a).

certain charges that are lesser included offenses. We affirm the judgment of the trial court.

On the basis of the evidence adduced at trial, the court reasonably could have found the following facts. On October 24, 1999, with Diane Valiquette as a passenger, Clark Smith was operating his motorcycle in the southbound lane of Hanover Street in Meriden. The defendant, who had been traveling northbound, made a left turn into a gasoline station near the intersection of Hanover Street and Main Street. The defendant's vehicle and the motorcycle collided. The impact of the collision threw both Smith and Valiquette from the motorcycle, causing Smith to suffer serious head injuries that ultimately were fatal. Valiquette also suffered serious injuries, but survived. The defendant was not injured.

Shortly after the collision, Paul Rowen, an officer with the Meriden police department, arrived on the scene and spoke briefly with the defendant. He then asked her to perform three standard field sobriety tests, to which she consented. The defendant's performance on all three tests indicated that she was intoxicated. Rowen arrested the defendant and transported her to the Meriden police station. After permitting the defendant to telephone her attorney, Rowen requested that the defendant submit to a Breathalyzer test, to which she consented. The test was conducted with a Breathalyzer machine, an Intoxilyzer 5000. The defendant twice provided an insufficient sample of air for a complete test. During the second attempt, however, the defendant provided enough air for the machine to calculate an intermediate reading of her BAC. That intermediate reading appeared on the screen in front of Rowen, but did not appear on the slip that the Intoxilyzer printed.

I

The defendant first claims that the court improperly heard testimony regarding the intermediate results of

the Breathalyzer test, resulting in prejudice to her that implicated her right to a fair trial. The defendant asserts that she preserved that claim for appeal by means of a motion in limine, which sought to preclude the intermediate Intoxilyzer readings from evidence. We disagree that the defendant's motion in limine sufficed to preserve her claim for appeal.

The defendant filed a motion in limine, pursuant to Practice Book § 42-15, to preclude any testimonial evidence related to the intermediate Intoxilyzer readings of her BAC. In her motion in limine, she argued that the testing was incomplete and that even if the intermediate readings constituted a completed test, a second Breathalyzer test was not performed, causing the readings not to conform to the requirements of General Statutes § 14-227a.[2] In response to the motion in limine, the state requested a hearing pursuant to *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), regarding the admissibility of such testimony despite the nonconformity with the statutory requirements. The state claimed that the intermediate results possessed a sufficient indicia of scientific reliability of BAC to be relevant to the question of the defendant's intoxication. Pursuant to Practice Book § 42-15, the court and the parties agreed that the court would reserve judgment on the defendant's motion in limine until it conducted a *Porter* hearing regarding the intermediate readings. The *Porter* hearing was scheduled for April 26, 2002.

The trial commenced on April 23, 2002. The court heard the substance of the testimony that was the sub-

---

[2] General Statutes § 14-227a (b) provides in relevant part: "[E]vidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided . . . (5) an additional chemical test of the same type was performed at least thirty minutes after the initial test was performed . . . ."

ject of the defendant's motion in limine prior to conducting the *Porter* hearing. After conducting the *Porter* hearing, the court concluded that even though the intermediate results would be admissible under *Porter*, their nonconformity with the strict requirements of § 14-227a (b) required their exclusion from the trial. The court reasoned that, although the strict requirements of § 14-227a (b) were not incorporated explicitly into General Statutes § 53a-56b, those requirements needed to be met to introduce evidence of Breathalyzer test results.

The defendant claims that her motion in limine preserved for appeal her objection to the court's hearing any testimony regarding the Intoxilyzer's intermediate readings. Her motion in limine, however, did not address that issue. The motion in limine sought only to preclude evidence from the case-in-chief. The court, in fact, granted the motion. The defendant's motion in limine, however, did not address the court's hearing the evidence outside the state's case-in-chief. The motion, therefore, did not preserve the defendant's claim that the court's mere knowledge of the intermediate Intoxilyzer readings was prejudicial to her.

In the alternative, the defendant claims that Rowen's testimony regarding the intermediate readings prejudiced the court and brought into question the ultimate fairness of the trial. The defendant, therefore, requests review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). We will review the claim, but conclude that the defendant waived her claim of prejudice at trial. The defendant is unable to satisfy the third prong of *Golding*, which requires that a constitutional violation clearly existed and that she clearly was denied a fair trial. See *State* v. *Arluk*, 75 Conn. App. 181, 191–92, 815 A.2d 694 (2003); *State* v. *Cooper*, 38 Conn. App. 661, 676, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996).

The following facts demonstrate that the defendant waived any claim that by hearing the testimony regarding the Intoxilyzer's intermediate readings, the court was so prejudiced that it denied her a fair trial. As a consequence of filing her motion in limine, the discussion surrounding the motion and the state's request for a *Porter* hearing, the defendant was aware that the court was going to conduct a hearing to determine the admissibility of the Intoxilyzer's readings. The defendant knew at the time Rowen testified that she was in the midst of a trial in which the court that was to rule on the admissibility of the evidence also was the trier of fact. Prior to eliciting Rowen's testimony regarding the Intoxilyzer's intermediate readings, the prosecutor warned the defendant that the evidence was about to be presented, i.e., "Now, this is an area where I am going to be getting into the observations of the officer relative to the machine . . . ." That statement followed a previous warning from the prosecutor that he was planning to elicit testimony related to the *Porter* hearing scheduled for the following day. The prosecutor stated: "I am going to come to a point where I am going to ask him about his observations as to the Intoxilyzer; that portion of it will relate to the hearing tomorrow and the admissibility of that evidence, of the officer's observations of *any readings on the Intoxilyzer*." (Emphasis added.)

The prosecutor's statements informed the defendant that the court would learn of the test results prior to determining their admissibility. Nonetheless, the defendant failed to object to Rowen's testimony that was the subject of the motion in limine itself at the time the prosecutor informed the court and the defendant that the testimony was imminent, and when Rowen actually testified as to his observations of the Intoxilyzer readings. The defendant also failed to request that the court disqualify itself from ruling on the admissibility of the

evidence after hearing Rowen's testimony. By failing to object at the appropriate time, the defendant implicitly waived any claim as to the denial of her right to a fair trial that could result from the court's learning the test results. "A defendant must avail himself of the opportunity to make an objection and if he does not avail himself of the opportunity, he must be holden to a waiver of the objection." (Internal quotation marks omitted.) *State* v. *Tate*, 59 Conn. App. 282, 285, 755 A.2d 984, cert. denied, 254 Conn. 935, 761 A.2d 757 (2000). Because she implicitly waived her constitutional claim at trial by failing to object to the testimony concerning the test results when the prosecutor explicitly drew attention to the testimony, the defendant cannot satisfy the third prong of *Golding*, and her claim, therefore, must fail.[3]

## II

The defendant next claims that the court improperly imposed consecutive sentences for her conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs and reckless driving because they are lesser offenses included within manslaughter in the second degree with a motor vehicle and manslaughter in the second degree, of which she also was convicted. The defendant claims that the imposition of consecutive sentences on those charges violates the constitutional prohibition against double jeopardy.[4] We disagree.

[3] For the same reason, the defendant cannot prevail on a claim of plain error. "Just as a valid waiver calls into question the existence of a constitutional violation depriving the defendant of a fair trial for the purpose of *Golding* review, a valid waiver also thwarts plain error review of a claim." *State* v. *Corona*, 69 Conn. App. 267, 274, 794 A.2d 565, cert. denied, 260 Conn. 935, 802 A.2d 88 (2002).

[4] We resolve the defendant's claims on federal constitutional grounds. Although the constitution of Connecticut does not include a specific double jeopardy provision, the due process guarantee of article first, § 8, of our state constitution has been held to provide protection against double jeopardy. See *State* v. *Morris*, 49 Conn. App. 409, 418, 716 A.2d 897, cert. denied, 247 Conn. 904, 720 A.2d 516 (1998).

Although the defendant failed to preserve her claim for appeal, we will review it under *Golding*, as the record is adequate for review and the claim is of constitutional magnitude alleging a violation of a fundamental right. See *State* v. *Laws*, 37 Conn. App. 276, 289, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995). The defendant's claim, however, fails to satisfy the third prong of *Golding* because the constitutional prohibition against double jeopardy is not implicated by imposing consecutive sentences in this instance.

We first address the defendant's claim that operating a motor vehicle while under the influence of liquor or drugs is a lesser offense included within manslaughter in the second degree with a motor vehicle. This court previously addressed the issue in *State* v. *Lonergan*, 16 Conn. App. 358, 366, 548 A.2d 718 (1988), aff'd, 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990), in which we concluded that the two offenses were not the same offense for double jeopardy purposes under the test established by the United States Supreme Court in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).[5] *Blockburger* provides that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id., 304.

---

[5] In reaching its decision in *Lonergan*, this court applied an additional test to determine whether two offenses implicated the double jeopardy clause when those offenses are charged in successive prosecutions as opposed to being charged in the same prosecution. *State* v. *Lonergan*, supra, 16 Conn. App. 367. Our Supreme Court later invalidated that additional test for successive prosecutions pursuant to *United States* v. *Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993). Our Supreme Court, following *Dixon*, recognized the *Blockburger* test as "the exclusive test for determining whether two offenses are the same offense for double jeopardy purposes." *State* v. *Alvarez*, 257 Conn. 782, 795, 778 A.2d 938 (2001).

"In applying the *Blockburger* test, it is clear that the offenses charged here do not constitute the 'same' offense. Although the alleged violations arose out of the same act, each offense requires proof of a fact that the other does not. A conviction of manslaughter in the second degree with a motor vehicle . . . requires proof of (1) operation of a motor vehicle (2) while . . . [under the influence of intoxicating liquor or drug or both] (3) which causes the death of another person. General Statutes § 53a-56b . . . . A conviction of operating a motor vehicle while under the influence of intoxicating liquor or drugs, requires proof of (1) operation of a motor vehicle (2) on a public highway or on one of the other designated areas (3) while under the influence of intoxicating liquor or drugs. General Statutes § 14-227a . . . .

"While these two offenses share certain elements, each contains an element that the other does not. A conviction for operating a motor vehicle while under the influence of alcohol must be supported by proof that the defendant operated a motor vehicle on one of the locations specified in the statute; such a geographical element is not pertinent to a conviction for manslaughter with a motor vehicle while intoxicated. A conviction for manslaughter with a motor vehicle while intoxicated must be supported by proof that another person died as a result of the defendant's intoxication; such a death element is not pertinent to a conviction for operating a motor vehicle while under the influence of alcohol. For these reasons, the two offenses are not the same under the *Blockburger* test." (Citations omitted.) *State* v. *Lonergan*, supra, 16 Conn. App. 366–67.

"Our analysis of double jeopardy claims does not end, however, with a comparison of the offenses. The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for

example, there is a clear indication of contrary legislative intent." (Internal quotation marks omitted.) *State v. Kirsch*, 263 Conn. 390, 421, 820 A.2d 236 (2003). The legislative history of both § 53a-56b and § 14-227a is silent regarding the legislature's intent of precluding or permitting the prosecution of one offense when the state has commenced the prosecution of the other offense for the same conduct. "Therefore, we are left with silence on the issue, from which we do not determine legislative intent." Id., 420.

The defendant's claim that reckless driving is a lesser offense included within manslaughter in the second degree likewise must fail. In applying the *Blockburger* test, the offenses charged clearly do not constitute the same offense. A conviction of reckless driving requires proof of (1) operation of a motor vehicle (2) on a public highway or on one of the other designated areas (3) in a manner that is reckless having regard to the width, traffic and use of the highway. General Statutes § 14-222 (a). A conviction of manslaughter in the second degree requires proof of (1) recklessness on the part of the defendant (2) that causes the death of another person. General Statutes § 53a-56. Although both of the offenses require reckless conduct, a conviction for reckless driving must be supported by proof that the defendant operated a motor vehicle and operated that vehicle in one of the areas designated by the statute; neither the operation of a motor vehicle nor the geographical location is an element of manslaughter in the second degree. A conviction of manslaughter in the second degree must be supported by proof that another person died as a result of the defendant's reckless conduct; such a death element is not required for a conviction of reckless driving.

Under the *Blockburger* test, therefore, manslaughter in the second degree and reckless driving are not the same offense. Moreover, the legislative history of both

§ 53a-56 and § 14-222 is silent regarding the legislature's intent of precluding or permitting the prosecution of one offense when the state has commenced the prosecution of another offense for the same conduct. We therefore conclude that manslaughter and reckless driving are not the same offense.

The judgment is affirmed.

In this opinion the other judges concurred.